IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LYNN SNYDER,               )
                           )
        Plaintiff,         )
                           )
    v.                     )   Civil Action No. 18-1434
                           )
NANCY A. BERRYHILL, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
                           )
        Defendant.         )

O R D E R

AND NOW, this 23rd day of September, 2019, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Acting Commissioner of Social Security's final decision, denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms.  See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence,

nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) failing to find at Step Two of the sequential analysis that Plaintiff's vestibular disorder and weight loss were "severe" impairments; (2) failing to give proper weight in his residual functional capacity ("RFC") analysis to the medical opinion of Plaintiff's treating physician; (3) failing to consider properly Plaintiff's testimony regarding her symptoms; and (4) failing to assign Plaintiff to the next higher age category in applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

With regard to Plaintiff's first argument, the Court notes at the outset that the Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment. See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006). In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D. Pa. March 27, 2006). Since Plaintiff's claim was not denied at Step Two, it is irrelevant whether the ALJ correctly found any of Plaintiff's other alleged impairments to be non-severe as long as, as discussed, infra, he properly accounted for all impairments later in his analysis.

Moreover, the Court finds here that substantial evidence supports the ALJ's findings, which do not include vestibular disorder and weight loss among Plaintiff's severe impairments. (R. 18). A claimant has the burden of demonstrating, at Step Two of the disability determination process, that he or she has a "severe" impairment or combination of impairments. See 20 C.F.R. §§ 416.912(a), 416.920(c); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987). An impairment is "not severe" if the medical evidence establishes that the condition has no more than a minimal effect on the claimant's ability to perform basic work activities. See SSR 85-28, 1985 WL 56856, at *3 (1985); Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (citing SSR 85-28). The severity step of the sequential evaluation process thus functions as "a de minimis screening device to dispose of groundless claims." Newell, 347 F.3d at 546; see also McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (holding that the "burden placed on an applicant at step two is not an exacting one").

The Court notes that the ALJ engaged in extensive discussion of Plaintiff's allegations related to her vestibular issues. (R. 19-22). The ALJ reviewed in great detail Plaintiff's various visits to physicians, but explained that, although Plaintiff had seen multiple specialists, there was

no etiology for her subjective symptoms and no definitive treatment recommended other than attempts to address her symptoms. (R. 21). The ALJ also noted that physical examinations of Plaintiff showed only intermittent and inconsistent abnormalities, her testing was nearly all normal, and none of her treatment providers placed any safety limitations on her. (R. 21). Further, the ALJ stated that, in addition to the lack of documented and consistent objective testing, Plaintiff's reports (and those of her sister) were not consistent with the record. (R. 21). Thus, the Court finds that the ALJ did not err in concluding that Plaintiff's "vestibular complaints and their various descriptions in the record are not medically determinable impairments as none of the claimant's treating specialists found an objective cause for her subjective symptoms, physical examination showed only intermittent abnormalities, testing was generally normal, and the only basis for her treatment has been her subjective complaints." (R. 22).

Regarding Plaintiff's allegations of weight loss, the Court notes that the record shows that Plaintiff's treatment providers noted her weight in their records and found her to be well nourished, well developed, appearing to be healthy, and in no apparent distress. The Court thus finds that the evidence of record fails to support Plaintiff's argument that the ALJ should have found her weight loss to be a severe impairment.

Upon consideration of the evidence presented in this case, the Court therefore finds that the ALJ's decision, which included ample discussion of the evidence of record but did not include her vestibular issues or weight loss as severe impairments, is indeed supported by substantial evidence. Moreover, as the ALJ explained in his decision, even if he "were to conclude the conditions were medically determinable impairments, the exertional and postural limitations, as well as limitations to hazards in the [RFC] would account for the attendant symptoms." (R. 22). Thus, as noted, supra, even if the Court were to find that the ALJ erred in failing to find Plaintiff's vestibular disorder and weight loss to be severe impairments, such failure would constitute harmless error as the ALJ accounted for all of Plaintiff's work-related limitations, regardless of the diagnostic label under which they might fall, later on in his analysis.

Second, the Court finds no merit in Plaintiff's contention that the ALJ failed to give proper weight in his RFC analysis to the medical opinion evidence of Plaintiff's treating psychologist, Faisal Roberts, Psy.D. The Court notes that a claimant's RFC is the most that a claimant can do despite his or her limitations, and the determination of a claimant's RFC is solely within the province of the ALJ. See 20 C.F.R. §§ 416.927(d)(2), 416.945(a), 416.946(c). In formulating a claimant's RFC, the ALJ must weigh the evidence as a whole, including medical records, medical source opinions, a claimant's subjective complaints, and descriptions of his or her own limitations. See 20 C.F.R. §§ 416.927, 416.929, 416.945. Moreover, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's

opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). A treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Social Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

The Court finds that the ALJ did not fail to provide sufficient reasons for discounting the opinion of Dr. Roberts, nor did he substitute his own lay analysis for the judgment of Dr. Roberts in formulating Plaintiff's RFC. Rather, the ALJ fulfilled his duty as fact-finder to evaluate Dr. Roberts' opinion, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. § 416.927. In fact, the ALJ specified that he was giving Dr. Roberts' opinion "little weight" only after engaging in an extensive discussion of Plaintiff's treatment records with the doctor and the doctor's medical opinion. (R. 27-28, 31-32). Specifically, the ALJ noted that, in a medical impairment questionnaire from October of 2017, Dr. Roberts assessed Plaintiff with a GAF score of 55, indicative of moderate symptoms, but she opined that Plaintiff had many extreme, marked, and moderate limitations. (R. 31-32, 729-34). The ALJ also explained that Dr. Roberts stated that Plaintiff had had 3 or more episodes of decompensation lasting at least two weeks within a 12-month period, and she predicted that Plaintiff would be absent from work more than 4 days per month. (R. 32, 733-34). Upon reviewing the record, the ALJ noted that the treatment notes from Dr. Roberts and Kreinbrook Psychological services contain unremarkable findings. (R. 32). The ALJ also remarked that Plaintiff's treatment records note some improvement with treatment, and that none of her other treating providers documented findings that would support extreme or marked limitations. (R. 32). Accordingly, the Court finds that the ALJ did not err in ultimately deciding to give Dr. Roberts' opinion little weight in his analysis. (R 32).

Third, Plaintiff argues that the ALJ erred by failing to consider properly Plaintiff's testimony regarding her symptoms. In support of this contention, Plaintiff argues that the ALJ should have found that the severity of her symptoms was supported generally by the objective medical evidence, and more specifically, that it was supported by the medical opinion evidence. The Court finds, however, that the ALJ did in fact properly address the medical evidence, including the medical opinion evidence, in evaluating Plaintiff's subjective complaints.

In determining whether a claimant is disabled, the ALJ must consider all of a claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. § 416.929(a). A claimant's subjective

complaints of symptoms alone are not sufficient to establish disability. See id. In evaluating a claimant's subjective complaints, the ALJ must consider, first, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms she alleges. See 20 C.F.R. § 416.929(b). Once an impairment is found, the ALJ then must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit her ability to work. See 20 C.F.R. § 416.929(c)(3)(i)-(vii) (factors relevant to symptoms can include daily activities, medications and medical treatment). In the ALJ's decision here, after examining Plaintiff's medical records (including the medical opinion evidence) and subjective complaints in connection with her alleged impairments, the ALJ simply found that such evidence did not fully support the limitations she alleges.

Although Plaintiff claims that the ALJ erred in discounting her testimony for improper reasons, Plaintiff does not indicate any specific errors that he made nor does she identify any particular testimony that the ALJ failed to evaluate. Plaintiff does, however, specifically contend that the ALJ unfairly rejected the medical opinion evidence, which she alleges supports her testimony. Upon review of the decision, the Court finds that, in formulating Plaintiff's RFC, the ALJ properly considered Plaintiff's testimony and statements, and that he properly evaluated the medical opinion evidence of record.

First, the Court has already addressed the ALJ's evaluation of the assessment of Dr. Roberts, supra, and determined that the ALJ did not err in giving that assessment little weight. Additionally, the Court finds that the ALJ did not err in giving the opinion of Julia T. Mathos, D.O., little weight as Dr. Mathos did not address Plaintiff's functional limitations, but simply made a conclusory statement about Plaintiff's disability being "permanent" on a Department of Public Welfare form. (R. 31, 543-44). Finally, the Court finds that the ALJ did not err in giving state agency medical consultant James Caramanna, M.D., partial weight as he did not have an opportunity to review certain records, including those regarding Plaintiff's balance complaints (which began after he issued his decision). (R. 32-33).

Furthermore, the Court finds that the ALJ provided a thorough analysis of Plaintiff's alleged symptoms by discussing Plaintiff's testimony at length, and by showing that her statements were not fully supported by the objective medical evidence nor were they supported by her own statements to her treatment providers. (R. 24-30). Moreover, the ALJ did in fact find that Plaintiff has certain severe impairments, namely, major depressive disorder, generalized anxiety disorder, panic disorder without agoraphobia, overactive bladder with stress and urge incontinence, status-post multiple hernia repairs, incision revisions and mesh removal, and small fiber neuropathy, and that those impairments caused her to have certain limitations. (R. 18, 24). However, upon substantial review of all the evidence of record, the ALJ simply found that the evidence as a whole did not support limitations to the extent that Plaintiff alleges.

Thus, the ALJ found, after careful consideration of all the evidence, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for the reasons he provided in his decision. (R. 25). The Court finds that the ALJ did not err in evaluating Plaintiff's subjective allegations because he thoroughly reviewed them in accordance with the regulations, and he provided sufficient explanation as to why he found those allegations to be not entirely consistent with the evidence of record.

Fourth, Plaintiff contends that the ALJ erred by failing to apply the Grids' higher age category of "Closely Approaching Advanced Age" to her case, which would have resulted in a finding of "disabled" once she reached 50 years of age. It should first be noted that the Commissioner has promulgated the Grids to assist in determining whether a claimant is disabled. The Grids reflect the analysis of various considerations, including the claimant's physical abilities, age, education, and work experience, and direct a finding of "disabled" or "not disabled" based on the combination of these factors. However, where a claimant has non-exertional limitations as well as exertional ones, an ALJ cannot rely solely on the Grids to make his or her disability finding. See Sykes v. Apfel, 228 F.3d 259, 267 (3d Cir. 2000). Additionally, according to Section 416.963(b), the Commissioner "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 416.963(b). Further, if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the Commissioner] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." Id. In borderline situations, the ALJ "cannot mechanically apply the Grids' age categories, but must 'give full consideration to all relevant facts.'" Lucas v. Barnhart, 184 Fed. Appx. 204, 206 (3d Cir. 2006) (quoting Kane v. Heckler, 776 F.2d 1130, 1133-34 (3d Cir. 1985)).

The regulations, however, do not define the term "few," and courts, including this Court, have held that there is no bright line rule defining what constitutes a borderline situation. See Holland v. Comm'r of Soc. Sec., No. 10-1019, 2012 WL 11052, at *1 (W.D. Pa. Jan. 3, 2012). Also, although the Third Circuit has held that various periods of time between a claimant's birthday and the cutoff date for an age category can qualify as a borderline situation, it has declined to establish any precise rules for making such determination. See, e.g., Kane, 776 F.2d at 1130 (48 days); Lucas, 184 Fed. Appx. at 204 (106 days). Accordingly, because both the Commissioner and the courts have had ample opportunity to identify a cutoff for borderline situation but have chosen not to do so, "it would appear that courts should consider not only the amount of time between a claimant's age and the cutoff for the next age category, but the surrounding circumstances as well." Holland, 2012 WL 11052, at *1 n.1.

In this case, Plaintiff was 46 years old on the alleged onset date, and she was 49 years old and 3 months away from her 50th birthday on the date of the ALJ's decision. (R. 33). In his decision, the ALJ took note of Plaintiff's birthday, and stated that, although a borderline age situation existed, he found that use of the higher age category was "not supported by the limited

6

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED, and Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED.

s/ Alan N. Bloch<br>United States District Judge

ecf: Counsel of record

---

adverse impact of all factors on the claimant's ability to adjust to other work." (R. 33). The ALJ explained that, as no fixed age adjustment period exists, he was obligated to "evaluate the overall impact of all the factors in a claimant's case." (R. 34). Thus, the ALJ specified that, as of the date of his decision, there were more than three months until Plaintiff attained the age of 50. (R. 33). The ALJ then emphasized that Plaintiff "has been able to perform semi-skilled work in a general clerk position that is performed around the country." (R. 33). Accordingly, he concluded that, based on the facts of this particular case, "there is limited adverse impact on the claimant to support the use of the higher age category." (R. 33). Upon review of the ALJ's analysis, the Court finds that the ALJ clearly considered the facts of this particular case in determining that use of the higher age category of the Grids was inappropriate here.

Moreover, the Court notes that the ALJ did not ultimately rely upon the Grids in finding Plaintiff to be not disabled. Although he explained that the Grids could be used as a decision-making framework, the ALJ instead ultimately relied on the testimony of the vocational expert ("VE") at Step Five of his analysis. (R. 34-35, 72-74). Thus, since the VE took into consideration Plaintiff's actual age and all of her limitations, his testimony provided further support for the ALJ's conclusion that Plaintiff's age did not negatively impact her ability to perform work. See Lockwood v. Comm'r of Soc. Sec., 616 F.3d 1068, 1072 (9th Cir. 2010) (concluding that the ALJ did not mechanically apply age categories where he relied on VE testimony in finding the plaintiff to be not disabled). Thus, the Court concludes that the ALJ did not mechanically apply the Grids to Plaintiff's situation, but instead considered the facts of this particular case in determining that the use of the higher age category was inappropriate here.

As to any additional arguments mentioned summarily by Plaintiff in her brief, the Court finds that she has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

In sum, the Court finds that the ALJ did not err in his findings regarding Plaintiff's severe impairments at Step Two of his analysis. The Court further finds that the ALJ gave proper weight in his decision to the medical opinion evidence, and he included appropriate limitations in his RFC finding. Additionally, the Court finds that the ALJ did not err in evaluating Plaintiff's subjective complaints, nor did he err by mechanically applying the Grids to Plaintiff's case. Accordingly, the Court affirms.